Slip-Op. 25-65

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GARY L. BARNES,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>      Defendant. | Before:  Jennifer Choe-Groves, Judge<br><br>Court No. 25-00043 |

## OPINION AND ORDER

[Granting Defendant's motion to dismiss without prejudice.]

Date: May 23, 2025

<u>Gary L. Barnes</u>, of Green Bay WI, proceeding pro se.

<u>Justin R. Miller</u>, Attorney-in-Charge, <u>Eric E. Laufgraben</u>, Senior Trial Counsel, and <u>Luke Mathers</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were <u>Yaakov M. Roth</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Claudia Burke</u>, Deputy Director.

Choe-Groves, Judge:  Plaintiff Gary L. Barnes ("Plaintiff" or "Barnes") filed this action as a private citizen challenging the constitutionality of tariffs announced and imposed by the President of the United States, Donald J. Trump.  Compl., ECF No. 3.  Before the Court is the Motion to Dismiss ("Motion") filed by Defendant United States ("Defendant") arguing that Plaintiff lacks standing to bring this claim.  Def.'s MTD, ECF No. 9.  Plaintiff filed Plaintiff's Reply to Defendant's

Motion to Dismiss.  Pl.'s Reply Def.'s MTD ("Pl.'s Resp."), ECF No. 13.

Defendant filed its Reply in Support of its Motion to Dismiss.  Def.'s Reply, ECF

No. 14.  For the following reasons, the Court grants Defendant's Motion to

Dismiss.

## BACKGROUND

President Trump issued Proclamation 10886 on January 20, 2025, declaring

a national emergency at the United States southern border with Mexico, citing the

threat posed by "cartels, criminal gangs, known terrorists, human traffickers,

smugglers, unvetted military-age males from foreign adversaries, and illicit

narcotics."  Proclamation 10886, 90 Fed. Reg. 8327 (Jan. 20, 2025) (declaring a

national emergency at the southern border of the United States).  The scope of the

national emergency was subsequently expanded on February 1, 2025, to include

Mexico, Canada, and the People's Republic of China ("China") in response to the

claimed failure of those nations to address the flow of illicit drugs into the United

States.  Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 1, 2025) (imposing duties

to address the flow of illicit drugs across our northern border); Exec. Order No.

14194, 90 Fed. Reg. 9117 (Feb. 1, 2025) (imposing duties to address the situation

at our southern border); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 1, 2025)

(imposing duties to address the synthetic opioid supply chain in the People's

Republic of China).  Asserting authority under the International Emergency

Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, et seq., and the National Emergencies Act, 59 U.S.C. § 1601, et seq., the President imposed tariffs on goods imported from Mexico, Canada, and China.  Exec. Order No. 14193, 90 Fed. Reg. 9113–16; Exec. Order No. 14194, 90 Fed. Reg. 9117–20; Exec. Order No. 14195, 90 Fed. Reg. at 9121–24.

Plaintiff filed his Complaint on February 3, 2025.  Compl.  Since the Complaint was filed, the tariffs on goods from Canada and Mexico have been paused or amended multiple times.  Exec. Order No. 14197, 90 Fed. Reg. 9183 (Feb. 3, 2025) (progress on the situation at our northern border); Exec. Order No. 14198, 90 Fed. Reg. 9185 (Feb. 3, 2025) (progress on the situation at our southern border); Exec. Order No. 14227, 90 Fed. Reg. 11,371 (Mar. 2, 2025) (amendment to duties to address the situation at our southern border); Exec. Order No. 14231, 90 Fed. Reg. 11,785 (Mar. 6, 2025) (amendment to duties to address the flow of illicit drugs across our northern border); Exec. Order No. 14232, 90 Fed. Reg. 11,787 (Mar. 6, 2025) (amendment to duties to address the flow of illicit drugs across our southern border).  The President issued Executive Order 14228 on March 3, 2025, increasing the duty rate applicable to China from ten percent to 20 percent.  Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 3, 2025) (further amendment to duties addressing synthetic opioid supply chain in the People's Republic of China).  On April 2, 2025, the President issued Executive Order

14257, which imposed a ten percent duty on all dutiable goods imported into the United States.  Exec. Order No. 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025) (regulating imports with a reciprocal tariff to rectify trade practices that contribute to large and persistent annual United States goods trade deficits).  Executive Order 14257 incorporated the tariffs previously imposed on Mexico and Canada and added a country-specific tariff of 34 percent on goods from China.  Id. at 15,045– 47, Annex I.  Executive Order 14256 was issued on the same day, eliminating de minimis treatment under 19 U.S.C. § 1321(a)(2)(C) for certain products from China.  Exec. Order No. 14256, 90 Fed. Reg. 14,899 (Apr. 2, 2025) (further amendment to duties addressing the synthetic opioid supply chain in the People's Republic of China as applied to low-value imports).  Tariff rates applicable to Chinese goods were subsequently increased on April 8 and 9 through executive orders.  Exec. Order No. 14259, 90 Fed. Reg. 15,509 (Apr. 8, 2025) (amendment to reciprocal tariffs and updated duties as applied to low-value imports from the People's Republic of China); Exec. Order No. 14266, 90 Fed. Reg. 15,625 (Apr. 9, 2025) (modifying reciprocal tariff rates to reflect trading partner retaliation and alignment).  On May 12, 2025, President Trump issued another executive order that removed the tariffs imposed on China through the April 8 and 9, 2025 executive orders and suspended for 90 days 24 percentage points and retained ten percentage points of the ad valorem duty rate imposed through the April 2, 2025

executive order.  Exec. Order No. 14298, 90 Fed. Reg. 21,831 (May 12, 2025)

(modifying reciprocal tariff rates to reflect discussions with the People's Republic

of China).

## JURISDICTION AND STANDARD OF REVIEW

Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C.

§ 1581(i), which Defendant does not dispute.  Federal courts must have an

independent jurisdictional basis to resolve the matter presented.  Badgerow v.

Walters, 596 U.S. 1, 4 (2022) (citing Hall Street Assocs., LLC v. Mattel, Inc., 552

U.S. 576, 582 (2008)).

Through Section 1581(i), Congress has granted to the U.S. Court of

International Trade "exclusive jurisdiction" over:

> any civil action commenced against the United States, its agencies, or
> its officers, that arises out of any law of the United States providing
> for—
> (A) revenue from imports or tonnage;
> (B) tariffs, duties, fees, or other taxes on the importation of merchandise
> for reasons other than the raising of revenue;
> (C) embargoes or other quantitative restrictions on the importation of
> merchandise for reasons other than the protection of the public health
> or safety; or
> (D) administration and enforcement with respect to the matters referred
> to in subparagraphs (A) through (C) of this paragraph and subsections
> (a)–(h) of this section.

28 U.S.C. § 1581(i)(1); see also Orleans Int'l, Inc. v. United States, 334 F.3d 1375,

1378 (Fed. Cir. 2003) (concluding that Congress' grant of exclusive jurisdiction to

the U.S. Court of International Trade over matters described in Section 1581(i)

removed from other federal district courts general federal-question jurisdiction

over those matters). "Section 1581(i) embodies a 'residual' grant of jurisdiction,

and may not be invoked when jurisdiction under another subsection of § 1581 is or

could have been available, unless the remedy provided under that other subsection

would be manifestly inadequate." Sunpreme, Inc. v. United States, 892 F.3d 1186,

1191 (Fed. Cir. 2018) (citing Fujitsu Gen. Am., Inc. v. United States, 283 F.3d

1364, 1371 (Fed. Cir. 2002)).

The U.S. Court of International Trade possesses exclusive jurisdiction over

"any civil action commenced against" federal agencies or officers that "arises out

of any law of the United States providing for . . . tariffs, duties, fees, or other taxes

on the importation of merchandise for reasons other than the raising of revenue" or

under any law providing for "revenue from imports." 28 U.S.C. § 1581(i)(1)(A)–

(B). The U.S. Court of International Trade also has exclusive jurisdiction over any

civil action arising out of any law providing for "administration and enforcement

with respect to the matters referred to in" any preceding provision of Section

1581(i)(1). Id. § 1581(i)(1)(D). The U.S. Court of International Trade's exclusive

jurisdiction over tariff cases is significant because "Congress had in mind

consolidating this area of administrative law in one place, and giving to the U.S.

Court of International Trade, with an already developed expertise in international

trade and tariff matters, the opportunity to bring to it a degree of uniformity and consistency." Conoco, Inc. v. U.S. Foreign-Trade Zones Bd., 18 F.3d 1581, 1586 (Fed. Cir. 1994).

The U.S. Court of International Trade has exercised exclusive jurisdiction broadly in constitutional challenges to tariffs, duties, exactions, and embargoes. See, e.g., United States v. United States Shoe Corp., 523 U.S. 360, 365–66 (1998) (constitutional challenge to Harbor Maintenance Fee); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1350–51 (Fed. Cir. 2010) (constitutional challenge to Tariff Schedules of the United States). The Court has also exercised jurisdiction in more recent challenges to actions imposing tariffs. See, e.g., HMTX Indus. v. United States, Court No. 20-00177 (Ct. Int'l Trade), appeal filed, Court No. 23-1891 (Fed. Cir. May 16, 2023)[1]; Transpacific Steel LLC v. United States, 44 CIT __, __, 466 F. Supp. 3d 1246, 1251 (2020), remanded on other grounds, 4 F.4th 1306, 1318 n.5 (Fed. Cir. 2021) (Presidential proclamation imposing tariffs on steel under section 232 of the Trade Expansion Act of 1962).

In 1977, Congress enacted the IEEPA statute. International Emergency Economic Powers Act, Pub. L. 95-223, 91 Stat. 1625 (1977). The Trading with the

---

[1] A review of the Court's docket reveals that more than 4,000 cases have been filed and stayed challenging the imposition of tariffs under Section 301 of the Tariff Act of 1974, 19 U.S.C. § 2411.

Enemy Act ("TWEA") was amended in 1977 to apply solely to times of war, and the IEEPA statute was newly enacted "to cover the President's exercise of emergency economic powers in response to peacetime crises." Regan v. Wald, 468 U.S. 222, 227–28 (1984). In one of the U.S. Court of International Trade's earliest cases, the Court recognized that it had jurisdiction over an action challenging the imposition of a duty by the President under Section 5(b) of the TWEA. Alcan Sales, Div. of Alcan Aluminum Corp. v. United States, 2 CIT 323, 316, 321–22, 528 F. Supp. 1159, 1161, 1165 (1981) aff'd, 693 F.2d 1989 (Fed. Cir. 1982). The U.S. Supreme Court has recognized that "[t]he authorities granted to the President by [Section] 203 of IEEPA are essentially the same as those in [Section] 5(b) of TWEA, but the conditions and procedures for their exercise are different." Regan, 468 U.S. at 228.

The IEEPA authorizes the President of the United States, at relevant times, to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any . . . importation or exportation of . . . any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B). The IEEPA statute describes the use of executive action to control the importation and exportation of goods into the United States from foreign countries. See id. The President has determined to

exercise this authority through the imposition of tariffs imposed in executive orders and proclamations. The IEEPA grants the President powers "to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared" and the authority granted "may not be exercised for any other purpose." Id. § 1701(b).

With respect to the Court's jurisdiction, the tariffs challenged by Plaintiff are, at least in part, targeted at controlling the illicit flow of drugs or migrants, not raising revenue, which satisfies the criteria articulated in 28 U.S.C. § 1581(i)(1)(B). See 28 U.S.C. § 1581(i)(1)(B) (granting exclusive jurisdiction to the U.S. Court of International Trade over any civil action commenced against the United States, its agencies, or its officers arising out of any law of the United States providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue"); see Exec. Order No. 14193, 90 Fed. Reg. 9113 (imposing ad valorem tariffs to encourage the "compliance and cooperation of Canada" in addressing the "sustained influx of illicit opioids and other drugs"); Exec. Order No. 14194, 90 Fed. Reg. 9117 (imposing ad valorem tariffs to encourage the "compliance and cooperation of the government of Mexico" to address "the sustained influx of illegal aliens and illicit opioids and other drugs"); Exec. Order No. 14195, 90 Fed. Reg. 9121 (imposing ad valorem tariffs to encourage the "compliance and cooperation of China" to address

the "sustained influx of synthetic opioids"); Exec. Order No. 14197, 90 Fed. Reg.

9183 (acknowledging that Executive Order 14193 imposed tariffs to address the

threat of drug trafficking at the Canadian border and pausing the tariffs in response

to steps taken by Canada "to alleviate the illegal migration and illicit drug crisis

through cooperative actions"); Exec. Order No. 14198, 90 Fed. Reg. 9185

(acknowledging that Executive Order 14194 imposed tariffs to address the threat of

drug trafficking at the Mexican border and pausing the tariffs in response to steps

taken by Mexico "to alleviate the illegal migration and illicit drug crisis through

cooperative actions"). The Court does not reach the merits in this case, but is

satisfied that it has Section 1581(i) jurisdiction over this case.

## DISCUSSION

In order to adjudicate a case, a court must have subject matter jurisdiction

over the claims presented. Steel Co. v. Citizens for a Better Env't ("Citizens for a

Better Env't"), 523 U.S. 83, 94–95 (1998). Plaintiff bears the burden of

establishing subject matter jurisdiction. See Norsk Hydro Can., Inc. v. United

States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (citing Kokkonen v. Guardian Life

Ins. Co., 511 U.S. 375, 377 (1994)). Pursuant to U.S. Court of International Trade

Rule 12(b), a litigant may seek to have any or all claims for relief dismissed on the

basis that subject matter jurisdiction is lacking. USCIT R. 12(b)(1); Fed. R. Civ.

Proc. 12(b)(1). "If the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action." USCIT R. 12(h)(3). Whether to dismiss a claim for lack of jurisdiction is a question of law. JCM Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Id. at 678 (citing Twombly, 550 U.S. at 556) "[I]f the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate." Airport Road Ass., Ltd. v. United States, 866 F.3d 1346, 1351 (Fed. Cir. 2017) (quoting Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002)). In reviewing a motion to dismiss, the Court accepts as true well-pleaded factual allegations and draws reasonable inferences in favor of the non-moving party. Wanxiang Am. Corp. v. United States, 12 F.4th 1369, 1373 (Fed. Cir. 2021).

Article III standing is a necessary component of the Court's subject matter jurisdiction. Lujan v. Defs. of Wildlife, 504 U.S. 555, 559–60 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). The doctrine of standing ensures that "a plaintiff is sufficiently

adversary to a defendant to create an [Article] III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction." Davis v. Passman, 442 U.S. 228, 239 n.18 (1979) (citing Warth v. Seldin, 422 U.S. 490, 498 (1975))

Plaintiff incorrectly avers that because Article III of the Constitution "does not contain any wording to require standing to bring a court action" that "some latitude in the rules" should be afforded for claims challenging acts as unconstitutional. Pl.'s Resp. at 3. Article III limits the adjudicatory authority of the federal courts to only genuine "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. The U.S. Supreme Court has recognized that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than" this limitation on the Court's jurisdiction. Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976)). A party's standing to bring a legal action before the federal courts is an essential element of a case or controversy under Article III. Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 597–98 (2007) (citing ASARCO Inc. v. Kadish, 490 U.S. 605, 613 (1989)). Despite questions of constitutionality routinely arising before the federal courts, Plaintiff has pointed to no authority, nor is the Court aware of any, that would support applying a lesser standard for parties asserting claims based on the Constitution. See Pl.'s Resp. at 3. The Court will not adopt the less stringent application of standing that Plaintiff advances.

The "irreducible constitutional minimum of standing contains three elements." Lujan, 504 U.S. at 560.  A party must demonstrate: (1) that it has suffered "an injury in fact," that is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) a "causal connection between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Id. at 561–62 (internal quotations and citations omitted).  "[A]t the pleading stage, a plaintiff must 'clearly . . . allege facts demonstrating' each element" to establish standing. Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Warth, 422 U.S. at 518).

To establish an injury in fact, a plaintiff must demonstrate that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560 (citations omitted).  A concrete injury is one that is "real, and not abstract."  Spokeo, 578 U.S. at 340 (internal quote omitted).  A concrete injury may be intangible.  Id. at 340–41.  A particularized injury is one that affects the plaintiff in a personal and individualized way.  Lujan, 504 U.S. at 560 n.1.  To be actual or imminent, an injury cannot be speculative and must have either already occurred or be likely to occur soon.  FDA v. All. for Hippocratic Med., 602 U.S.

367, 381 (2024) (citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)).

"[A]llegations of possible future injury are not sufficient" to constitute an actual or imminent injury. Clapper, 568 U.S. at 409.

Plaintiff argues that he has suffered an injury in the form of a "breach of the [c]onstitutional [c]ontract" as a result of the imposed tariffs. Pl.'s Resp. at 3; see Compl. ¶¶ 10–13, 53 ("President Trump owes a duty to myself and all other United States citizens to perform his duties as the United States Constitution requires."), 63 ("President Trump's actions to impose tariffs on foreign products brought into the United States will . . . seriously undermine the division of powers that are contained in the United States Constitution."). The U.S. Supreme Court has recognized that injuries based on "the right, possessed by every citizen, to require that the Government be administered according to law" are abstract and cannot support Article III standing. Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc., 454 U.S. 464, 482–83 (1982) (citing Schlesinger v. Reservist Comm. to Stop the War, 418 U.S. 208, 224 n.13 (1974); Baker v. Carr, 369 U.S. 186, 208 (1962); and Fairchild v. Hughes, 258 U.S. 126, 129 (1922)).

In his Complaint, Plaintiff suggests that he will suffer an economic injury as a consumer. Compl. ¶ 26. He notes that his wife and he "live on a small pension and Social Security" and argues that the imposition of tariffs will "affect [their]

standard of living." Id. ¶¶ 62–63. Plaintiff contends that the challenged tariffs will "put an indirect tax on United States citizen's income through an increase in the cost of product prices paid by consumers" and "be a hidden tax on the income of the United States citizen[s] that raises money for the government." Id. ¶ 63. Plaintiff concedes in his Complaint that his alleged injury is not particularized by asserting that the tariffs will "adversely affect the household income of myself *and all United States citizens*." Id. ¶ 26 (emphasis added). Plaintiff has pled in his Complaint that he is a private citizen concerned by the possibility that costs of goods will increase, not a member of a group that may have a particularized injury, such as importers. Id. at 1, ¶¶ 25–26, 69, 72, 74. Plaintiff's fears of higher costs and alleged unconstitutional conduct are therefore not particularized. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 344 (2006); see also Frothingham v. Mellon, 262 U.S. 447, 488 (1923) ("The party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.").

Plaintiff has also failed to plead that the injury that he might suffer as a consumer is actual or imminent. Imminence is "a somewhat elastic concept, [but] it cannot be stretched beyond its purpose, which is to ensure that the alleged injury

is not too speculative for Article III purposes—that the injury is certainly impending." Clapper, 568 U.S. at 409 (quoting Lujan, 504 U.S. at 564 n.2). Plaintiff has failed to plead in his Complaint how he has been injured by incurring specific costs that increased as a result of the imposed tariffs. Because Plaintiff has not pled a consumer injury that is more than speculative at this time, the injury claimed is not actual or imminent for purposes of standing.

Even taking Plaintiff's allegations in his Complaint as true and drawing all inferences in his favor, the economic injuries that he alleges as a consumer are speculative and not particularized. For these reasons, the Court concludes that Plaintiff has not satisfied the injury-in-fact requirement of Article III standing. Because Plaintiff has not sufficiently pled an injury-in-fact, the Court need not probe further into the remaining elements of standing or Defendant's challenge to Plaintiff's prudential standing. If a plaintiff fails to satisfy any element of Article III standing, the court cannot reach the merits of the dispute. Consequently, the Court will not opine on the constitutionality of President Trump's imposition of tariffs under the IEEPA statute.

## CONCLUSION

Upon consideration of Defendant's Motion to Dismiss, ECF No. 9, Plaintiff's Reply to Defendant's Motion to Dismiss, ECF No. 13, Defendant's Reply in Support of its Motion to Dismiss, ECF No. 14, and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant's Motion to Dismiss, ECF No. 9, is granted and Plaintiff's Complaint, ECF No. 3, is dismissed without prejudice; and it is further

**ORDERED** that the Court will allow Plaintiff to file an Amended Complaint resolving all pleading deficiencies on or before June 23, 2025. If Plaintiff does not file an Amended Complaint by the deadline, the Court will direct the Clerk of Court to close this case and judgment will be entered in favor of Defendant.

 /s/ Jennifer Choe-Groves 
Jennifer Choe-Groves, Judge

Dated: May 23, 2025 
New York, New York